# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HERITAGE FOUNDATION**, et al., ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF JUSTICE** ) <br> ) <br> *Defendant.* ) <br> ) | Case No. 24-cv-00952 (ACR) |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S REQUEST FOR A PRE-MOTION CONFERENCE**

Plaintiffs submit they are entitled to the transcript of Mark Zwonitzer's interviews with Special Counsel Robert K. Hur. Defendant's Request for a Pre-Motion Conference's (ECF No 13) ("Def. Req.") arguments for withholding appear to have no merit.

## I. Exemption 5.

Defendant submits that "portions of the transcripts are exempt under Exemption 5 as protected attorney work product" because "they memorialize a witness interview, carried out during a criminal investigation, that was constructed and thought out by prosecutors." Def. Req. at 2. Plaintiffs are unable to fully respond to this argument because the Department has declined to share certain essential facts.

**1.** Start with the elephant in the room: waiver. The transcripts are of an interview in which Zwonitzter was a potential Defendant. The Special Counsel specifically recounted in his Report that he considered charging Zwonitzter. Did Zwonitzer and Zwonitzer's Counsel have an opportunity to review the transcript for accuracy as is often done? Were they given a copy as part of the investigative process? We know that President Biden's attorneys reviewed for "accuracy." *See* Declaration of Bradley Weinsheimer ¶ 15, No. 24-cv-700 (TJK) (May 31, 2024) (ECF No. 34-2) ("Weinsheimer Decl."). The Department has pointedly and repeatedly refused to answer these basic predicate questions as to waiver. Plaintiffs are thus left to speculate. They *expect* there was waiver, but do not *know*.

**2.** A reasonable person could read Defendant's papers to argue that the transcripts are fact work product because they "memorialize" an interview and are "near verbatim." *See* Def. Req. at 2–3 ("*See, e.g.*, *Martin v. Off. of Special Couns., MSPB*, 819 F.2d 1181, 1183, 1187 (D.C. Cir. 1987) (holding that 'eleven signed witness statements' 'fall within the work-product privilege'); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12 (D.D.C. 2008) (finding that

'nearly verbatim transcripts of the FBI's questions and [a witness's] answers' were 'primarily fact work product" and otherwise opinion work product); *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 425 (D.D.C. 2014) ('[C]ourts in this district have held substantially verbatim witness statements contained in interview memoranda . . . to be 'fact' rather than 'opinion' work-product.')"). But a reasonable person could also read Defendant's papers to simply argue the transcript itself is work product.

Plaintiffs do not know which view is correct, because Defendant has twice refused to confirm that its argument is predicated on a "near verbatim" transcript versus arguing a verbatim transcript is *itself* work product. Plaintiffs do not know the specifics of the Zwonitzer transcript, but know that the transcript of President Joseph R. Biden's interview with Special Counsel Hur was *not* verbatim. *See* Weinsheimer Decl. at ¶ 14 (President Biden's interview transcript omits transcribable information).

Plaintiffs do not quarrel that notes of interviews—even "near verbatim"—*can* receive fact work product protection in certain circumstances. But the interview *itself* surely was not privileged—it was an interview of a potential criminal defendant and thus there was zero expectation of confidentiality. *See, e.g.*, *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) (disclosure to adversary destroys work product). Therefore, a *verbatim* transcription of that interview is also not privileged. *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, No. 02-cv-6942 (MMM), 2003 WL 27374179, at *4–*7 (C.D. Cal. Dec. 23, 2023) (presence of potentially adverse party at interview waived work product as to transcript of that interview); *see also In re Enforcement of Subpoena Issued by F.D.I.C.*, No. 3:11-mc-80066 (CRB), 2011 WL 2559546, at*2 (N.D. Cal. June 28, 2011) (transcript not work product); *Laftin v. Bande*, 258 F.R.D. 31, 35 (D.D.C. 2009) (similar).

2

**II.     Exemptions 6 & 7(C).**

Plaintiffs do not dispute that Zwonizter has *some* cognizable privacy interest under FOIA. But the presence of a privacy interest sufficient to invoke an exception says nothing about the weight of that privacy interest which is critical to the required balancing of the privacy interest and public interest in disclosure. *See, e.g.*, *Samahon v. FBI*, 40 F.Supp.3d 498, 517 (E.D. Penn. 2014). Here, there is no dispute that Zwonitzer's involvement in Special Counsel's Hur's investigation is public. There also is no dispute that the *content* of much of Zwonitzer's involvement is public via the Hur Report itself and the limited release made here. That substantially diminishes Zwonitzer's privacy interests. *See, e.g., CREW v. DOJ*, 746 F.3d, 1082, 1092 (D.C. Cir. 2014) ("*CREW II*"); *Kimberlin v. DOJ*, 139 F.3d 944, 949 (D.C. Cir. 1998); *Nation Mag., Washington Bureau v. U.S. Cust. Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995).

On the flip side of the coin the public interest is great. The D.C. Circuit has "repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy." *CREW II*, 746 F.3d at 1093. As the D.C. Circuit has explained, relevant to that interest (in the context of a specific criminal investigation) is "the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches." *Id.*; *accord id.* at 1093–94 (collecting authorities); *CREW v. DOJ*, 854 F.3d 675, 682 (D.C. Cir. 2017) ("*CREW III*") (same).[1] That interest may be amplified by "[w]idespread media attention, an ongoing public policy discussion, and the public profile of the subject of the investigation[.]" *CREW v. DOJ*, 978 F.Supp.2d 1, 13

---

[1] Necessarily, that interest is applicable even to a specific case, especially a high-profile one. *See, e.g.*, *CREW III*, 854 F.3d at 679; *CREW II*, 746 F.3d at 1094; *CREW v. DOJ*, 978 F.Supp.2d 1, 13 (D.D.C. 2013) ("*CREW I*").

3

(D.D.C. 2013) ("*CREW I*").

Here, the President *himself* denied sharing classified information with his ghostwriter, a statement that is inconsistent with the Special Counsel's findings. *See* https://www.whitehouse.gov/briefing-room/speeches-remarks/2024/02/08/remarks-by-president-biden/  Special Counsel Hur joined issue during his Congressional testimony.

> Mr. GAETZ.  February 8th the White House questioned, ''Mr. President, why did you share classified information with your ghost writer?''  The President: ''I did not share classified information.  I did not share it.  I guarantee I did not.''  That is not true, is it, Mr. Hur?
> Mr. HUR.  That is inconsistent with the findings based on the evidence in my report.

Hearing on the Report of Robert K. Hur: Hearing Before the H. Jud. Comm., 119th Cong.  30–31.

Thus, the President has directly put at issue a core aspect of Zwonitzer's testimony—the nature and extent of classified information revealed by President Biden.  That brings the entire matter of Zwonitzer into public dispute.  What did Zwonitzer do?  What classified information did he obtain?  The Zwonitzer transcript is not cumulative of *that* point as to Special Counsel Hur's Report precisely because the President contested whether he disclosed classified information to Zwonitzer—which puts Zwonitzer's involvement directly in issue.  The American People have the right to judge for themselves a dispute between the President and the Special Counsel.

| | |
|---|---|
| Dated:  June 28, 2024 | Respectfully submitted,<br><br>/s/ Samuel Everett Dewey<br>SAMUEL EVERETT DEWEY<br>(No. 999979)<br>Chambers of Samuel Everett Dewey, LLC<br>Telephone:  (703) 261-4194<br>Email: samueledewey@sedchambers.com<br><br>ERIC NEAL CORNETT<br>(No. 1660201)<br>Law Office of Eric Neal Cornett |

4

Telephone: (606) 275-0978
Email: neal@cornettlegal.com

DANIEL D. MAULER
(No. 977757)
The Heritage Foundation
Telephone: (202) 617-6975
Email: Dan.Mauler@heritage.org

KYLE BROSNAN
(No. 90021475)
The Heritage Foundation
Telephone: (202) 608-6060
Email: Kyle.Brosnan@heritage.org

MAX TAYLOR MATHEU
(No. 90019809)
Telephone: (727) 249-5254
Email: maxmatheu@outlook.com

*Counsel for Plaintiffs*

5